UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JASON STOMPS,

                Petitioner,

    v.

MICHAEL OBENLAND,

                Respondent.

CASE NO. 3:18-cv-05365-RBL-JRC

REPORT AND RECOMMENDATION

NOTED FOR:  November 16, 2018

The District Court has referred this petition for a writ of habeas corpus to United States Magistrate Judge J. Richard Creatura.  The Court's authority for the referral is 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR3 and MJR4.  Petitioner Jason Stomps, represented by counsel, filed the petition pursuant to 28 U.S.C. § 2254.

Petitioner argues he was convicted on insufficient evidence, that he received ineffective assistance of counsel at trial, and that he is actually innocent of the charges for which he was convicted. However, the Washington Court of Appeals did not unreasonably apply clearly established federal law when it determined petitioner's convictions were predicated on sufficient

evidence. In addition, petitioner's second and third grounds are unexhausted and procedurally

defaulted, and he has not demonstrated the cause and prejudice or actual innocence to overcome

the procedural default. Therefore, the Court recommends that petitioner's habeas petition be

denied.

## PETITIONER'S CLAIMS IN THIS HABEAS PETITION

1) Petitioner's due process rights were violated because he was convicted based on
   insufficient evidence.

2) Petitioner's Sixth Amendment rights were violated when he received ineffective
   assistance of counsel at trial.

3) Petitioner is actually innocent of his convictions.

## BASIS FOR CUSTODY AND FACTS

Petitioner was convicted of one count of burglary in the first degree, three counts of

kidnapping in the second degree, and three counts of assault in the second degree. Dkt. 9, Ex. 1.

He was sentenced to 180 months imprisonment and is currently incarcerated in the Monroe

Correctional Center.

On direct appeal, the Washington Court of Appeals stated the facts of petitioner's case as

follows:

> Stomps worked as a bail bond recovery agent. One evening, Stomps went to the
> home of Annette and Bill Waleske looking for Courtney Barnes. Barnes was free
> on bail, and his girlfriend, Sinan Hang, guaranteed the bail bond. Hang listed the
> Waleskes' address as her address. Hang was friends with Annette [footnote omitted]
> and had used the Waleskes' address in the past, but she did not have permission to
> use it on the bail bond application. Barnes listed a separate address. When Barnes
> failed to appear for a court hearing, the bail bond company contracted with Stomps
> to locate him.
>
> When Stomps arrived at the Waleskes' residence, Annette and Bill were out, but
> their daughter, Tayler Waleske; son, Quincey Waleske; and daughter's boyfriend,
> Nathan Panosh, were at the home. Tayler and Nathan were watching a movie when

they heard pounding on the door. They walked towards the door and heard Stomps yell, "I'm looking for Courtney Barnes. Open up your door, or I'll kick your fucking door down." Tayler did not know anyone by the name of Courtney Barnes. Tayler was frightened by Stomps, and yelled out, "We don't know Courtney. You need to leave." The pounding and yelling continued. Tayler and Nathan went upstairs to get Quincey. Tayler then called 911.

While Tayler was on the phone with the 911 operator, Stomps broke down the front door with a railroad tie driver, which is similar to a sledgehammer. Once inside, he ordered everyone downstairs. Even though he recognized that the three individuals were not the fugitive he was looking for and that Barnes was not in the house, Stomps pointed his gun at them and ordered Quincey, who had just gotten out of the shower and had only a towel wrapped around him, to handcuff himself to Nathan and then ordered all three to get on the floor. Stomps then identified himself as a bail bond recovery agent. The parties dispute whether this was the first time Stomp identified himself. Nathan then repeatedly asked for the key to unlock the handcuffs, but Stomps refused.

Police arrived at the residence and detained Stomps. The State ultimately charged Stomps with first degree burglary, three counts of first degree kidnapping, and three counts of second degree assault; each charge included a special allegation that he was armed with a firearm.

During trial, Stomps admitted he did not first check the address listed for Barnes before going to the address listed for Barnes' girlfriend. Also during trial, Nathan testified that he did not feel free to leave when Stomps handcuffed him and pointed a gun at him. Quincey testified, "I was intimidated. I didn't want—I felt like my life was in danger." He further testified he did not feel free to leave because he was wrapped in a towel and being held at gunpoint. Tayler also testified that she did not feel free to leave because she "had a gun pointed at [her]" and was afraid she "was going to get shot." The 911 recording was also admitted where Tayler tells the operator they were scared.

A jury found Stomps guilty as charged.

Dkt. 9, Ex. 2 at pp. 1-3; *State v. Stomps*, 2016 WL 3965175, at *1-*2 (July 19, 2016) (citations to record omitted).

## PROCEDURAL HISTORY

Petitioner appealed his convictions to the Washington Court of Appeals, raising the sole ground that there was insufficient evidence to convict him. Dkt. 9, Ex. 4. The Court of Appeals rejected petitioner's argument and affirmed his convictions. *Id.*, Ex. 2. Petitioner then filed a

1  motion for reconsideration, which the Washington Supreme Court treated as a petition for

2  review. *Id.*, Exs. 7, 8. Petitioner again alleged he was convicted based on insufficient evidence,

3  and also argued for the first time that he received ineffective assistance of counsel, that he had a

4  lawful right to carry firearms, and that his sentences should have run concurrently. *Id.*, Exs. 7, 9.

5  The Washington Supreme Court denied review on February 8, 2017. *Id.*, Ex. 10. The

6  Washington Court of Appeals issued its mandate on February 13, 2017. *Id.*, Ex. 11.

7         Petitioner declined to file a personal restraint petition ("PRP") in the Washington Courts.

8  *See* Dkt. 9. Instead, he filed his petition for a writ of habeas corpus on May 8, 2018. Dkt. 1.

9  **STANDARD OF REVIEW**

10         Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus

11  petition may be granted with respect to any claim adjudicated on the merits in state court only if

12  the state court's decision was contrary to, or involved an unreasonable application of, clearly

13  established federal law, as determined by the Supreme Court, or if the decision was based on an

14  unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

15         A federal court may grant a habeas petition under two circumstances. First, a federal

16  habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached

17  by the Supreme Court on a question of law, or if the state court decides a case differently than

18  the Supreme Court has on a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529

19  U.S. 362 (2000).  Second, a federal habeas court may grant the writ if the state court identifies

20  the correct governing legal principle from the Supreme Court's decisions but unreasonably

21  applies that principle to the facts of the prisoner's case.  *Id.*  The Supreme Court has made clear

22  that a state court's decision may be overturned only if the application is "objectively

23  unreasonable."  *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).   AEDPA requires federal habeas

24

1   courts to presume the correctness of state courts' factual findings unless applicants rebut this

2   presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  In addition, review

3   of state court decisions under 28 U.S.C. § 2254(d)(1) is "limited to the record that was before the

4   state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181-82

5   (2011).

6                                    **EVIDENTIARY HEARING**

7           The decision to hold a hearing is committed to the Court's discretion.  *Schriro v.

8   Landrigan*, 550 U.S. 465, 473 (2007).  "[A] federal court must consider whether such a hearing

9   could enable an applicant to prove the petition's factual allegations, which, if true, would entitle

10  the applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474.  In determining whether

11  relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before

12  the state court. *Cullen*, 131 S.Ct. at 1388.  A hearing is not required if the allegations would not

13  entitle petitioner to relief under 28 U.S.C. § 2254(d).  *Landrigan,* 550 U.S. at 474.  "It follows

14  that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a

15  district court is not required to hold an evidentiary hearing." *Id.*; *see also Cullen*, 563 U.S. 170

16  (2011).

17          Here, petitioner's claims rely on established rules of constitutional law. There are no

18  factual issues that could not have been previously discovered by due diligence. Finally, the facts

19  underlying petitioner's claims are sufficient to establish that a rational fact finder would have

20  found him guilty of the crime. Therefore, the Court concludes that an evidentiary hearing is not

21  necessary to decide this case and petitioner's claims may be resolved on the existing state record.

22

23

24

1

## DISCUSSION

2

**I.      Unexhausted Grounds**

3       Respondent argues petitioner's second and third grounds are unexhausted and

4   procedurally defaulted. Dkt. 4. Petitioner agrees that they are unexhausted and procedurally

5   defaulted, but believes he can show cause and prejudice to allow the Court to nonetheless

6   examine his unexhausted grounds. Dkt. 10.

7       *A.   Exhaustion of State Court Remedies*

8       A state prisoner seeking habeas corpus relief in federal court must exhaust available state

9   relief prior to filing a petition in federal court. *See* 28 U.S.C. § 2254. Claims for relief that have

10  not been exhausted in state court are not cognizable in a federal habeas corpus petition. *James v.*

11  *Borg*, 24 F.3d 20, 24 (9th Cir. 1994). A petitioner must properly raise a habeas claim at every

12  level of the state courts' review. *See Ortberg v. Moody*, 961 F.2d 135, 138 (9th Cir. 1992).

13  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional

14  issues by invoking one complete round of the State's established appellate review process."

15  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Rose v. Lundy*, 455 U.S. 509, 518-19

16  (1982). A complete round of the state's established review process includes presentation of a

17  petitioner's claims to the state's highest court. *James*, 24 F.3d at 24.

18      "Fair presentation" requires that the prisoner alert the state courts to the fact that he is

19  asserting claims under the United States Constitution. *Duncan v. Henry*, 513 U.S. 364, 365

20  (1995). However, "to be fairly presented in the state courts, a claim must have been raised

21  throughout the state appeals process, not just at the tail end in a prayer for discretionary review."

22  *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004).

23

24

1   Here, petitioner properly raised his challenge to the sufficiency of the evidence both to

2   the Washington Court of Appeals and the Washington Supreme Court, and so that ground is

3   properly exhausted. Dkt. 9, Exs. 3, 7. However, petitioner raised his ineffective assistance of

4   counsel ground for the first time in the motion for reconsideration that the Washington Supreme

5   Court treated as a petition for review. *Id*., Ex. 7. He did not raise that ground with the

6   Washington Court of Appeals. Thus, petitioner has failed to raise that argument throughout the

7   state appeals process – instead he has raised it at the tail end of the process in a motion for

8   discretionary review, and thus has not fairly presented it to the state courts. *See Casey*, 386 F.3d

9   at 916. Similarly, he did not raise his actual innocence argument at all throughout the state

10  appeals process. *See* Dkt. 9, Exs. 3, 7. Therefore, plaintiff has failed to exhaust his state court

11  remedies as to his second and third habeas grounds.

12  *B. Procedural Default*

13  Procedural default is distinct from exhaustion in the habeas context. *Franklin v. Johnson*,

14  290 F.3d 1223, 1230 (9th Cir. 2002). The procedural default rule bars consideration of a federal

15  claim when it is clear the state court has been presented with the federal claim but declined to

16  reach the issue for procedural reasons or it is clear the state court would hold the claim

17  procedurally barred. *Id.* at 1230-31 (citations omitted). If a state procedural rule would now

18  preclude the petitioner from raising his claim at the state level, the claim is considered

19  "procedurally defaulted" and the federal courts are barred from reviewing the petition on the

20  merits. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *O'Sullivan*, 526 U.S. at 845.

21  Washington law provides that a state petition for a collateral attack on a judgment and

22  sentence in a criminal case must be filed within one year after the judgment becomes final. RCW

23  10.73.090(1). Petitioner's judgment became final when the Washington State Court of Appeals

24

1    issued its mandate on February 13, 2017. Dkt. 9, Ex. 11. Petitioner thus had until February 13,

2    2018 to file a PRP and provide the state courts with the opportunity to review his second and

3    third grounds. However, petitioner failed to file any PRP at all. Thus, petitioner has failed to

4    provide the state courts with one full opportunity to review his second and third grounds, and

5    Washington law now bars petitioner from filing a PRP raising those two grounds. Therefore,

6    petitioner's second and third grounds are unexhausted and procedurally defaulted, and the Court

7    may not consider them unless petitioner can show cause and prejudice, or can show he is actually

8    innocent of his convictions.

9        *C.  Cause and Prejudice*

10            The Court may only review a petitioner's procedurally defaulted grounds if he can show:

11    (1) cause for default in state court and actual prejudice from the alleged error; or (2) that federal

12    review is required to prevent a miscarriage of justice. *Coleman*, 501 U.S. at 748. To show cause,

13    petitioner must demonstrate that some external factor outside petitioner's control prevented

14    petitioner from properly exhausting his state court remedies. *Id*. at 753. "The fact that [a

15    petitioner] did not present an available claim or that he chose to pursue other claims does not

16    establish cause." *Martinez Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996) (citing *Murray

17    v. Carrier*, 477 U.S. 478, 486 (1986)). These external factors could include interference by state

18    actors that forced petitioner to miss a state procedural deadline, or a showing that the factual or

19    legal basis for a claim was not reasonably available. *Carrier*, 477 U.S. at 488.

20            The Supreme Court has recognized an exception to the requirement of showing cause to

21    overcome default: "Inadequate assistance of counsel at initial-review collateral proceedings [i.e.,

22    the first level of a state collateral attack] may establish cause for a prisoner's procedural default

23    of a claim of ineffective assistance at trial." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). "That

24

1    exception treats ineffective assistance by a prisoner's state postconviction counsel as cause to

2    overcome the default of a single claim – ineffective assistance of trial counsel – in a single

3    context – where the State effectively requires a defendant to bring that claim in state

4    postconviction proceedings rather than on direct appeal." *Davila v. Davis*, 137 S. Ct. 1058, 2062-

5    63 (2017). District Courts have also held that failure of a pro se litigant to file his or her own

6    collateral attack at all will mitigate a showing of cause based on ineffective assistance of counsel.

7    *See Braxton v. State of Arizona*, 2015 WL 5116765, at *6 n.5 (D. Ariz. June 4, 2015), *report and*

8    *recommendation adopted*, 2015 WL 5093478 (failure to file a state collateral attack, even

9    without an attorney, means a prisoner "cannot rely on *Martinez* to establish cause for his failure

10   to present his ineffective assistance of trial counsel claim to the state courts"); *Castillo v. Ryan*,

11   2013 WL 3282547, at *5 (D. Ariz. June 28, 2013) (finding the same).

12        Petitioner argues that the Court may consider his second ground because "[c]ause is his

13   actual innocence and the prejudice is the ineffective assistance of counsel set forth in Ground

14   Two." Dkt. 1, p. 10. Read liberally, petitioner may be attempting to invoke *Martinez* to allow the

15   Court to consider a procedurally defaulted ineffective assistance claim. As a preliminary matter,

16   *Martinez* applies only to claims for ineffective assistance of counsel. *Davila v. Davis*, 137 S. Ct.

17   1058, 2062-63. Thus, petitioner's argument has no application to his actual innocence claim.

18   Further, petitioner has completely failed to file a state PRP. *See* Dkt. 9.  Because petitioner

19   himself failed to file any state collateral attack, *Martinez* does not allow the Court to review his

20   procedurally defaulted claims. *See*, *e.g.*, *Anderson v. Koster*, 2012 WL 1898781, at *9 (W.D.

21   Mo. May 23, 2012) ("However, *Martinez* is inapposite because, here, petitioner himself is at

22   fault for not filing a pro se [state collateral attack[ in the first place"). Therefore, the Court

23

24

REPORT AND RECOMMENDATION - 9

1   cannot use petitioner's ineffective assistance of counsel claim as an excuse to consider

2   petitioner's procedurally defaulted ineffective assistance claim.

3        Further, petitioner has not otherwise explained the cause and prejudice that excuses his

4   default. As noted above, petitioner's habeas petition indicates his alleged cause is that he is

5   "actually innocent." Dkt. 1, p. 10. As will be discussed in section II(D) *infra*, a claim of actual

6   innocence may allow a court sitting in habeas to consider a defaulted claim. However, a showing

7   of actual innocence is not a showing of cause and prejudice, but rather a different method to

8   allow a Court to consider an otherwise procedurally defaulted claim. *See, e.g.*, *Wood v. Hall*, 130

9   F.3d 373, 378-79 (9th Cir. 1997) (making a determination as to whether actual innocence will

10  excuse default *after* making a determination plaintiff had not shown cause and prejudice).

11  Petitioner has provided no other explanation as to why he failed to raise his ineffective assistance

12  of counsel or actual innocence claims with the state courts. As such, petitioner has failed to

13  establish cause and prejudice, and thus has not excused the procedural default as to his

14  ineffective assistance or actual innocence grounds.

15      *D. Actual Innocence*

16      The Court can consider a defaulted claim in an extraordinary circumstance where an error

17  resulted in the conviction of one who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496

18  (1986); *Wood*, 130 F.3d at 379. Under *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995), a petitioner

19  must produce sufficient proof of his actual innocence to bring him "within the narrow class of

20  cases . . . implicating a fundamental miscarriage of justice." (quotations omitted). A petitioner

21  must support his claim of actual innocence "with new reliable evidence – whether it be

22  exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence –

23  that was not presented at trial." *Id*. at 324. A petitioner must "show that it is more likely than not

24

1   that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

2   Actual innocence in this context "means *factual* innocence, not mere *legal* insufficiency."

3   *Bousley v. United States,* 523 U.S. 614, 623–24 (1998) (emphasis added).

4          As the Supreme Court has noted, "tenable actual-innocence pleas are rare: '[A] petitioner

5   does not meet the threshold requirement unless he persuades the district court that, in light of the

6   new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a

7   reasonable doubt.'" *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup*, 513 U.S.

8   at 324). The Court's purpose is not to determine whether the petitioner is innocent, "'but rather

9   to assess the likely impact of the evidence on reasonable jurors.'" *Stewart v. Cate*, 757 F.3d 929,

10  938 (9th Cir. 2014) (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)). However, this standard is

11  extremely high and "should open only when a petition presents 'evidence of innocence so strong

12  that a court cannot have confidence in the outcome of the trial unless the court is also satisfied

13  that the trial was free of nonharmless constitutional error.'" *McQuiggin*, 569 U.S. at 401 (quoting

14  *Schlup*, 513 U.S. at 316). Thus, "'in virtually every case, the allegation of actual innocence has

15  been summarily rejected.'" *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*,

16  513 U.S. at 324).

17          Here, plaintiff has not shown that he is actually innocent of the crimes for which he was

18  convicted. First, he has not provided any additional evidence to support his factual innocence.

19  Rather, petitioner has argued that, "[i]f the jury had been presented with the proper evidence and

20  jury instructions, [petitioner] would be walking free." Dkt. 10, p. 26. He clarifies that, had

21  petitioner's trial counsel been effective, it would have "enable[d] the jury to render the proper

22  decision." *Id*. at p. 27. However, petitioner has not denied that he did in fact engage in the

23  conduct for which he was convicted – he merely argues the legal instructions given to the jury

24

1    were inappropriate because they failed to include an instruction indicating petitioner had state

2    law immunity as a bail bondsman. This is an argument of legal insufficiency -- not new

3    evidence showing factual innocence. *See*, *e.g.*, *Blue v. Glebe*, 2015 WL 3618537, at *2 (W.D.

4    Wash. June 9, 2015) (finding that an argument that the evidence at trial was not enough for the

5    jury to find guilt was a legal argument, not new evidence of factual innocence); *Dudgeon v.*

6    *Richards*, 2010 WL 417419, at *18 (W.D. Wash. Jan. 29, 2010) (finding that an argument that

7    evidence presented at trial was false is not new evidence demonstrating factual innocence). As

8    such, petitioner has not provided new evidence to demonstrate his factual innocence and thus has

9    not excused his procedural default.

10          Further, petitioner's argument that his actions do not constitute burglary, assault, or

11    kidnapping have already been determined by the Washington Court of Appeals. Petitioner argues

12    that the "jury instructions contained absolutely no instructions on when Bail Bond Recover[y]

13    Agents may enter onto the property of a third party in the performance of their duties." Dkt. 1, p.

14    6. The Court takes this to imply that petitioner challenges his conviction in part because the trial

15    Court improperly failed to instruct the jury that petitioner may have immunity. However, the

16    Washington Court of Appeals has already determined that petitioner does not enjoy any

17    immunity or privilege under Washington law that would have insulated him from criminal

18    liability. Dkt. 9, Ex. 2 at p. 4 n.2; *Stomps*, 2016 WL 3965175, at *2 n.2 ("Since Stomps entered

19    the home of an address given by the bond's co-signer and not the address of the fugitive, since he

20    was told by the individuals inside the home that they did not know the individual he was looking

21    for, and since he still proceeded to forcefully enter the home without permission, Stomps does

22    not have immunity from Washington criminal laws under *Portnoy*"). "[A] state court's

23    interpretation of state law, including one announced on direct appeal of the challenged

24

REPORT AND RECOMMENDATION - 12

1    conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76

2    (2005). Thus, because the Washington Court of Appeals has already determined petitioner is not

3    entitled to immunity, the Court must adopt that determination. Therefore, petitioner has not

4    provided any evidence indicating he is factually innocent.

5        *E. Conclusion*

6        Petitioner's second and third grounds are unexhausted and procedurally defaulted.

7    Further, petitioner has not shown cause and prejudice to excuse his default, nor has he shown

8    that he is actually innocent so as to allow the Court to consider his unexhausted and procedurally

9    defaulted claims. Thus, the Court may not make a determination as to petitioner's second and

10   third grounds. Therefore, the Court recommends petitioner's habeas petition be denied as to

11   those grounds.

12   **II.     Substantive Actual Innocence**

13       Respondent also argues petitioner's substantive actual innocence ground is not

14   cognizable in a habeas petition. Dkt. 4, p. 21. Because the Court has already found petitioner's

15   actual innocence claim is unexhausted and procedurally defaulted, and because the Court has

16   found that petitioner cannot excuse the procedural default, the Court need not address the

17   substantive actual innocence on its merits and declines to do so here.

18   **III.    Sufficiency of the Evidence**

19       Respondent has conceded that petitioner properly exhausted his first ground arguing he

20   was convicted based on insufficient evidence. Dkt. 4, p. 4. The Constitution forbids the criminal

21   conviction of any person except upon proof of guilt beyond a reasonable doubt. *In re Winship*,

22   397 U.S. 358 (1970). When evaluating a claim of insufficiency of the evidence to support a

23   conviction, the reviewing court must decide "whether, after viewing the evidence in the light

24

1  most favorable to the prosecution, any rational trier of fact could have found the essential

2  elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319

3  (1979). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the

4  evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic

5  facts to ultimate facts.'" *Coleman v. Johnson*, 132 S.Ct. 2060, 2064 (2012) (quoting *Jackson*,

6  443 U.S. at 419). The constitutional sufficiency of evidence review is sharply limited.  *Wright*,

7  505 U.S. at 296.  The finder of fact is entitled to believe the State's evidence and disbelieve the

8  defense's evidence.  *Id*. In addition, "[a]n additional layer of deference is added to this standard

9  of review by 28 U.S.C. § 2254(d), which obliges the petitioner . . . to demonstrate that the state

10  court's adjudication entailed an unreasonable application of the *Jackson* standard." *Emery v.*

11  *Clark*, 604 F.3d 1102, 1111 n.7 (9th Cir. 2010) (citing *Juan H. v. Allen*, 408 F.3d 1262, 1274

12  (9th Cir. 2005)).

13        In affirming petitioner's conviction, the Washington Court of Appeals stated:

14  **[] First Degree Burglary**

15  For the first degree burglary charge, the State had to prove beyond a reasonable
16  doubt that Stomps entered or remained unlawfully in the Waleskes' home with the
    intent to commit a crime against a person or property therein, while armed with a
17  deadly weapon. RCW 9A.52.020(1)(a). Stomps contends the State failed to prove
    he intended to commit a crime when he entered the home since he was acting in his
18  capacity as a bail bond recovery agent.

19  Viewing the facts in the light most favorable to the State, Stomps broke down the
    Waleskes' front door with a railroad tie driver at an address given for the bond co-
20  signor, not Barnes. And he broke down the door even after being told Barnes was
    not in the home and that he needed to leave. While pointing a gun at the three
21  individuals he knew were not Barnes, Stomps handcuffed two of the teenagers and
    forced all three to stay downstairs. Stomps did this even after he had been told that
22  Barnes was not in the house. [1]

23  ───────────────
    [1] Under the "Rule of Taylor," a bail bond recovery agent may pursue a fugitive "'into another State; may
    arrest him on the Sabbath; and, if necessary, may break and enter his house for that purpose. The seizure is ...
24  likened to the re-arrest by the sheriff of an escaping prisoner.' " *Johnson v. County of Kittitas*, 103 Wn. App. 212,
    217-18, 11 P.3d 862 (2000) (quoting *Taylor v. Taintor*, 83 U.S. 366, 371, 21 L. Ed. 287, 16 Wall. 366 (1872)).

"In any prosecution for burglary, any person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to the trier of fact to have been made without such criminal intent." RCW 9A.52.040. In this case, a rational trier of fact could find that Stomps unlawfully entered the Waleskes' home. Given the circumstances of the break in and the actions that transpired thereafter, a rational trier of fact can infer he intended to commit a crime. We defer to the trier of fact on any conflicting testimony as to Stomps' intent. *Thomas*, 150 Wn.2d at 874.

Given the evidence, a rational trier of fact could find the essential elements of first degree burglary beyond a reasonable doubt. Thus, sufficient evidence exits to support Stomps' first degree burglary conviction.

**[] Second Degree Kidnapping**

Stomps next contends sufficient evidence does not support his three second degree kidnapping convictions. Specifically, Stomps argues that there was insufficient evidence to show Stomps intentionally abducted the three individuals. We disagree. "A person is guilty of kidnapping in the second degree if he or she intentionally abducts another person under circumstances not amounting to kidnapping in the first degree." RCW 9A.40.030(1). "'Abduct' means to restrain a person by either (a) secreting or holding him or her in a place where he or she is not likely to be found, or (b) using or threatening to use deadly force." Former RCW 9A.40.010(1) (2011). [footnote omitted]

Here, Stomps ordered everyone downstairs after he broke the door down and entered the home. Even though he recognized that none of the three teenagers were Barnes, Stomps pointed his gun at them and ordered Quincey, who had just gotten out of the shower and had only a towel wrapped around him, to handcuff himself to Nathan and then ordered both men and Tayler to get on the floor. Nathan repeatedly asked for the key to unlock the handcuffs, but Stomps refused. Nathan testified that he did not feel free to leave when Stomps handcuffed him and pointed a gun at him. Quincey testified, "I was intimidated. I didn't want—I felt like my life was in danger." He further testified he did not feel free to leave because he was wrapped in a towel and being held at gunpoint. Tayler also testified that she did not feel free to leave because she "had a gun pointed at [her]" and was afraid she "was

However, a recovery agent may not "sweep from his path all third parties who he thinks are blocking his search for his client, without liability to the criminal law." *State v. Portnoy*, 43 Wn. App. 455, 466, 718 P.2d 805 (1986). Since Stomps entered the home of an address given by the bond's co-signer and not the address of the fugitive, since he was told by the individuals inside the home that they did not know the individual he was looking for, and since he still proceeded to forcefully enter the home without permission, Stomps does not have immunity from Washington criminal laws under *Portnoy*. [footnote by Court of Appeals]

going to get shot." The 911 recording was also admitted where Tayler tells the operator they were scared.

Viewing these facts in the light most favorable to the State and deferring to the trier of fact on any conflicting testimony as to Stomps' intent, we hold a rational trier of fact could find the essential elements of second degree kidnapping beyond a reasonable doubt for each of the three victims. Thus, sufficient evidence exists to support Stomps' three second degree kidnapping convictions.

**[] Second Degree Assault**

Lastly, Stomps contends sufficient evidence does not support his three second degree assault convictions. Specifically, Stomps argues that there is insufficient evidence to support his intent to create apprehension and fear of bodily injury. Again, we disagree.

"A person is guilty of second degree assault if he or she, under circumstances not amounting to assault in the first degree, . . . [a]ssaults another with a deadly weapon." RCW 9A.36.021(1)(c). Assault includes "putting another in apprehension of harm." *State v. Elmi*, 166 Wn.2d 209, 215, 207 P.3d 439 (2009).

Here, Stomps broke down the front door after yelling and pounding on the door, telling the occupants to "[o]pen up your door, or I'll kick your fucking door down." Stomps then ordered Tayler, Quincey, and Nathan downstairs. Even though he recognized the three individuals were not Barnes, Stomps pointed his gun at them, ordered Quincey and Nathan to handcuff themselves together, and then ordered all three to get on the floor. During trial, Quincey testified he felt his life was in danger; Tayler testified she felt she was going to die; and on the 911 tape, Tayler reported to the 911 operator that they were all scared.

Viewing the evidence in the light most favorable to the State, we hold a rational trier of fact could find the essential elements of second degree assault beyond a reasonable doubt. Thus, sufficient evidence exi[sts] to support Stomps' three second degree assault convictions.

Sufficient evidence exists to support all of Stomps' convictions. Therefore, we affirm.

Dkt. 9, Ex. 2 at pp. 4-7; *Stomps*, 2016 WL 3965175, at *2-*4 (citations to record omitted).

Here, the Court of Appeals did not unreasonably apply clearly established federal law when it found petitioner was convicted on sufficient evidence. Non-party Taylor Waleske testified that she, non-party Quincey Waleske, and non-party Nathan Panosh were at her parents'

1    residence when they heard pounding on the front door. Dk. 9, Ex. 12 at pp. 112-13. She testified

2    that petitioner was pounding on the front door to the residence and yelling. *Id*. at pp. 113-14. She

3    testified that petitioner yelled "I'm looking for Courtney Barnes. Open up your door, or I'll kick

4    your fucking door down." *Id*. at p. 114. Non-party Taylor also testified that petitioner broke the

5    door down and began holding non-party Taylor, non-party Quincey, and non-party Nathan at gun

6    point. *Id*. at pp. 127-28. She testified that she told petitioner she did not know the person

7    petitioner was looking for, and further testified that she did not provide petitioner permission to

8    enter the residence. *Id*. at p. 129. Non-party Tayler finally testified that she did not feel free to

9    leave when petitioner was pointing the gun at her, and felt afraid she "was going to get shot." *Id*.

10   at pp. 128-29.

11         In addition, non-party Quincey testified that, as petitioner was banging on the door, he

12   told petitioner he did not know who petitioner was looking for and that petitioner had to leave.

13   Dkt. 9, Ex. 12 at p. 83. He corroborated non-party Taylor's testimony that petitioner threatened

14   to kick the front door down, and testified petitioner did, in fact, knock the front door down. *Id*. at

15   p. 85. Non-party Quincey also testified that petitioner did not identify himself as a bail bondsman

16   or a bail agent. *Id*. at p. 87. He stated that petitioner knocked the door down, held him and the

17   other two victims at gunpoint, and ordered non-party Quincey and non-party Nathan to handcuff

18   themselves together. *Id*. at p. 94. Non-party Quincey further testified that he was wearing nothing

19   but a towel at this time. *Id*. at p. 93. Finally, he also testified that he did not feel free to leave

20   when petitioner was pointing the gun at him and that he felt afraid for his life. *Id*. at p. 91.

21         Finally, non-party Nathan also corroborated the testimony that petitioner threatened to

22   break the door down, and did in fact do so. Dkt. 9, Ex. 12 at pp. 102, 104. He also testified that

23   petitioner failed to identify himself as a bondsman or a bonds agent. *Id*. at pp. 101-102. He

24

1    further testified that petitioner held him and the other two victims at gunpoint and ordered non-

2    party Nathan and non-party Quincey to handcuff themselves together. *Id*. at p. 107. Finally, a

3    recording of a 911 call placed by non-party Tayler during the incident corroborates the victims'

4    testimony. *Id*. at pp. 115-26.

5          Here, a reasonable finder of fact could conclude that petitioner was guilty of burglary,

6    kidnapping, and assault. The testimony of three witnesses and the 911 recording show petitioner

7    broke into the victims' residence, held the three victims at gunpoint, and forced two of the

8    victims to handcuff themselves together. Viewing the evidence in the light most favorable to the

9    prosecution, the Court finds that a reasonable juror could conclude this was the unlawful entry of

10   a home with the intent to commit a crime in violation of RCW 9A.52.020, Washington's

11   burglary statute. Thus the Washington Court of Appeals did not unreasonably apply clearly

12   established federal law when it concluded the evidence was sufficient for a conviction of

13   burglary. Similarly, the evidence demonstrates petitioner restrained all three victims with his use

14   of a gun, and restrained non-party Quincey and non-party Panosh when he forced them to

15   handcuff themselves to each other. Again, with the evidence read in the light most favorable to

16   the prosecution, a reasonable juror could find that petitioner intentionally restrained the victims

17   with the use of deadly force in violation of RCW 9A.40.030, Washington's kidnapping statute.

18   Again, the Washington Court of Appeals did not unreasonably apply clearly established federal

19   law when it came to that conclusion. Finally, the evidence shows petitioner held the three victims

20   at gun point and they felt that they were not free to leave. The Court again finds, with the

21   evidence read in the light most favorable to the prosecution, a reasonable juror could conclude

22   those actions constitutds putting another in apprehension of harm using a deadly weapon in

23   violation of RCW 9A.36.021, Washington's assault statute. Again, the Washington Court of

24

1    Appeals did not unreasonably apply clearly established federal law when it came to that

2    conclusion.

3            Petitioner argues he was convicted on insufficient evidence because he was a bail

4    bondsman who had the right to use reasonable force to affect an arrest. Dkt. 1, p. 5. However, the

5    Washington Court of Appeals has already determined that petitioner does not enjoy any

6    immunity or privilege under Washington law that would have insulated him from criminal

7    liability in this context, holding:

8            Since Stomps entered the home of an address given by the bond's co-signer and not
             the address of the fugitive, since he was told by the individuals inside the home that
9            they did not know the individual he was looking for, and since he still proceeded to
             forcefully enter the home without permission, Stomps does not have immunity from
10           Washington criminal laws under *Portnoy*.

11   Dkt. 9, Ex. 2 at p. 4 n.2; *Stomps*, 2016 WL 3965175, at *2 n.2.

12           "[A] state court's interpretation of state law, including one announced on direct appeal of

13   the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*,

14   546 U.S. 74, 76 (2005). Thus, the Court must adopt the Washington Court of Appeals finding

15   that, under Washington law, petitioner was not entitled to use reasonable force under the

16   circumstances. Accordingly, the Court finds petitioner did not have any privilege or immunity to

17   insulate him from a Washington criminal charge, and his claim that he was improperly convicted

18   because he did have immunity is meritless.

19           Thus, the Washington Court of Appeals did not unreasonably apply clearly established

20   federal law when it determined petitioner was convicted on sufficient evidence. Therefore, the

21   Court recommends petitioner's habeas petition be denied as to this ground.

22

23

24

1

## CERTIFICATE OF APPEALABILITY

2        Petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

3    court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

4    (COA) from a district or circuit judge.  A certificate of appealability may issue only if petitioner

5    has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. §

6    2253(c)(2).  Petitioner satisfies this standard "by demonstrating that jurists of reason could

7    disagree with the district court's resolution of his constitutional claims or that jurists could

8    conclude the issues presented are adequate to deserve encouragement to proceed further."

9    *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484

10   (2000)).  Pursuant to this standard, this Court concludes that petitioner is not entitled to a

11   certificate of appealability with respect to this petition.

12

## CONCLUSION

13       For the reasons stated above, the Court recommends petitioner's habeas petition be

14   denied.

15       Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

16   fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

17   6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo*

18   review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver

19   of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v.*

20   *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

21

22

23

24

REPORT AND RECOMMENDATION - 20

1  imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

2  November 16, 2018, as noted in the caption.

3          Dated this 26th day of October, 2018.

4

5

6

7          J. Richard Creatura
           United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 21